UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JUDITH MCALLISTER-LEWIS, INDIVIDUALLY, AND AS SPECIAL ADMINISTRATOR OF THE ESTATE OF ROBERT L. LEWIS, DECEASED; <br><br> Plaintiff, <br><br> vs. <br><br> GOODYEAR DUNLOP TIRES NORTH AMERICA, LTD., AN OHIO LIMITED LIABILITY COMPANY; AND THE GOODYEAR TIRE & RUBBER COMPANY, AN OHIO CORPORATION; <br><br> Defendants. | 4:14-CV-04103-LLP <br><br> ORDER <br><br> (MOTION TO COMPEL, DOCKET 22) |

**INTRODUCTION**

This matter is before the court on plaintiff's complaint alleging negligence and products liability theories against the defendants. Plaintiff asserts defendants caused the wrongful death of her husband, her own physical and emotional injuries, and the loss of consortium of her husband along with associated claims for compensatory and punitive damages. See Docket No. 1. Pending is plaintiffs' motion to compel answers to interrogatories and responses to requests for production of documents. See Docket No. 22. The district court, the Honorable Lawrence L. Piersol, referred this motion to this magistrate judge for decision.

## FACTS

Plaintiff Judith McAllister Lewis ("Judith") filed her complaint on July 2, 2014, based on events that occurred on August 7, 2010. The following recitation of facts is drawn from plaintiffs' complaint and is not meant to lend the court's imprimatur on the verity of those facts, but merely to provide context for discussion of the instant dispute.

### A.    Judith's Complaint

On or about February 27, 2004, Robert Lewis ("Robert") purchased a 2003 Harley Davidson Ultra Classic motorcycle in Fond Du Lac, Wisconsin. This model Harley is a touring bike that is designed to carry two riders. The Dunlop D402 tire was the only tire approved for use by Harley Davidson as an OEM (original equipment manufacturer) replacement tire for the 2003 Ultra Classic. Goodyear and Dunlop designed, engineered, inspected, manufactured, distributed, sold and supplied the Dunlop D402 tires that were equipped on the motorcycle.

The rear tire on Robert's 2003 Harley Davidson Ultra Classic was a Dunlop D402, serial number DKTR2JY8 0107, size MT90B16 M/C74H, load range C, built at Goodyear and Dunlop's ("defendants'") Dunlop France manufacturing plant in Montlucon, France during the first week of 2007. The subject tire was designed, engineered, manufactured, marketed, distributed and sold by defendants from their North American headquarters located in Tonawanda, New York.

On August 7, 2010, Robert and his wife Judith were traveling westbound on Interstate 90 in South Dakota on the Harley Ultra Classic. The subject tire experienced a sudden and catastrophic deflation resulting in Robert's loss of control of the motorcycle. Robert sustained fatal injuries as a result of the accident and Judith sustained serious injuries.

Judith brings this suit alleging nine causes of action. They are:

1. Strict products liability—design defect.
2. Strict products liability—manufacturing defect.
3. Negligence.
4. Failure to warn—strict liability.
5. Negligent failure to warn.
6. Breach of Implied warranty of merchantability.
7. Breach of implied warranty of fitness
8. Loss of consortium
9. Punitive damages.

In support of her design defect cause of action, Judith alleges the subject tire was designed, engineered, manufactured, inspected, distributed and sold (a) without the rubber skim stock being properly bonded to the carcass ply, resulting in the rubber failing to properly adhere to the cords; (b) without the proper amount or proper type of rubber being applied over the cords; (c) without proper adhesion of the polyester carcass to the rubber; (d) with excessive mold flashing at the bead that was exacerbated by the use of the tire with foreseeable expected loads of a touring bike at highway speeds. In support of her manufacturing defect claim, Judith articulates the same four criticisms as were articulated in the design defect cause of action.

In support of her negligence claim, Judith asserts the defendants knew or should have known the Dunlop D402 tires were foreseeably prone to belt

separations and when used in a reasonable manner or when foreseeably misused would pose a risk of foreseeable injury. Judith's specific negligence allegations articulate the same four criticisms as were articulated in the design and manufacturing defect causes of action. Judith's negligence cause of action articulates seven additional criticisms: defendants failed to exercise reasonable care in: (e) designing, engineering, manufacturing, inspecting and/or selling D402 tires that would hold reasonably foreseeable loads of passengers and cargo at highway speeds; (f) manufacturing D402 tires in compliance with the design and engineering specifications for Dunlop D402 tires; (g) properly inspecting and/or testing D402 tires and/or their component materials during the manufacturing process to ensure that the tires were adequately and properly manufactured; (h) selling or delivering into a stream of commerce an unsafe and unreasonably dangerous tire when they knew or should have known of the dangers to the user of said tire; (i) failure to discover defects in the Dunlop D402 tires and preventing its ultimate use on the motorcycle; (j) failing to inform and give adequate warning to those expected to use the product of its condition or the facts which make it likely to be dangerous; and (k) were otherwise negligent.

Judith's strict liability—failure to warn claim (fourth cause of action) alleges she and Robert could not have, by the exercise of reasonable care, discovered the defects in the subject tire. She further alleges the defendants failed to provide adequate, clear, precise and complete instructions and warnings for the subject tire. Judith alleges defendants had notice the subject

tire in use on a 2003 Ultra Classic Harley Davidson was unreasonably dangerous and defective, yet did not take steps to prevent plaintiffs' injuries and that the defendants' failure to warn was a proximate cause of their injuries.  Judith's negligent failure to warn claim (fifth cause of action) articulates the same criticisms as are contained in the strict liability failure to warn cause of action.

Judith's breach of implied warranty of merchantability and fitness claims (sixth and seventh causes of action) assert the subject tire was designed, engineered, manufactured, inspected, distributed and/or sold (a) without the rubber skim stock being properly bonded to the carcass ply, resulting in the rubber failing to properly adhere to the cords; and (b) without the proper amount or proper type of rubber being applied over the cords; (c) without proper adhesion of the polyester carcass to the rubber; and (d) with excessive mold flashing at the bead that was exacerbated by the use of the tire with foreseeable expected loads of a touring bike at highway speeds.

In addition to damage claims for her own personal injuries and damages associated with the wrongful death of her husband, Judith asserts claims for loss of consortium (eighth cause of action) and for punitive damages (ninth cause of action).

## B.    State Court Proceedings

Judith first filed her complaint in state court in Erie County, New York but dismissed that case for *forum non conveniens* reasons when all parties agreed to waive any statute of limitations defenses to the refiling of the case in

another proper forum.  Out-of-state counsel represent both plaintiff and defendants in the federal district court here in South Dakota, with local counsel having appeared for both sides.

Some discovery occurred in the state court case before it was dismissed. See defendants' response to plaintiff's motion to compel, Docket 25, at p. 4.  It is not entirely clear, but appears that the same out-of-state counsel represented plaintiff in the state court case but different out-of-state defense counsel may have represented defendants.  See Docket Nos. 23-7 (Affidavit of plaintiff's counsel, Richard Gordon) and Docket 25 at p. 15 (defendants' brief, referring to "prior defense counsel from when the case was venued in New York . . ."  A  protective order was entered in the New York case which facilitated the exchange of approximately 280 documents in the New York case.  Docket 25, p. 4.

## DISCUSSION

### A.    Rule 37(a) Good Faith Conferral Requirement

Rule 37(a)(1) requires the parties to confer in good faith to attempt to resolve discovery disputes prior to filing a motion to compel.  See FED. R. CIV. P. 37(a)(1).  In addition, this court's local rules impose a similar requirement.  See DSD LR 37.1.  The record indicates plaintiff's counsel wrote to defendants' counsel prior to filing the instant motion, identifying the need for more complete discovery responses.  Defense counsel responded, disagreeing with plaintiff's position point by point.  Defense counsel proposed a protective order to solve some of the problems  presented by the instant motion.   Defense

counsel also indicated some of the requested documents have already been produced in the New York litigation under the same or a similar protective order.  In their brief, defendants explain that plaintiff's counsel never responded to the proposal for the protective order but instead filed the instant motion. Docket 25, p. 3.  Additionally, neither party informed the court what has become of the 280 documents produced in the New York litigation and whether or to what extent their existence or prior production mitigates the need for the pending motion to compel.

Though this court has not yet done so, (see Atmosphere Hospitality Management LLC v. Curtollo, 2015 WL 144586, D.S.D. Jan. 12, 2015), some courts interpret the good faith requirement of Rule 37 and the accompanying Local Rule to require more than the exchange of written correspondence.  See e.g. Slabaugh v. LG Electronics USA, Inc., 2015 WL 500849 at *3 (S.D. Indiana, Feb. 3, 2015) (good faith requirement "requires more than a mere exchange of letters or e-mails [and] contemplates an actual meeting with a date, time and place—whether by telephone, video conference, or  . . . preferably face-to-face."); Jones v. Zimmer, 2014 WL 6772916 at *3, n. 6 (D. Nev. December 2, 2014) (same, providing an exception only for prisoner litigation).

Because the parties have exchanged lengthy correspondence which outlines their positions regarding this discovery dispute, they have technically complied with the letter of Rule 37(a) and L.R. 37.1 as it has thus far been interpreted by this court.  But the intent of the good faith conferral requirement is to allow the parties to discuss the discovery matter and see if a

solution can be reached by *actually speaking with one another.* To that end, personal communication between the lawyers, via telephone, or preferably face-to face, is encouraged.

It is too easy to take rigid positions on issues when the only "good faith" effort that happens is each lawyer—sometimes hundreds of miles away from the other--- sits at his or her desk and writes a rough draft or ambitious version of their anticipated court filing in the form of a curt letter or email. The letters or emails are then converted to motions, briefs, and responses which are filed, and then the court is left to spend hours culling the wheat from the chaff in order to find a reasonable and legally sound solution. These written documents, though lucrative for the lawyers and impressive to the clients, are frustrating for the court. They contain positions that any seasoned lawyer probably knows or at least should suspect are not ultimately realistic.

Often a solution can be reached without judicial intervention if the lawyers dispense with the letters, emails, and motion practice and instead spend their time speaking with one another face to face or better yet call on local counsel to offer their advice about the probable outcome of the proposed motion, in light of local counsel's previous appearances before the deciding judge(s). That said, the lawyers in this case have certified that they exchanged their letters, they have filed their motions, briefs and attachments, and the court now endeavors to resolve the parties' dispute.

**B.    Scope of Discovery in Federal Cases**

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery in civil cases pending in federal court:

> Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

See Fed. R. Civ. P. 26(b)(1).

If a party fails to respond to a proper request for discovery, or if an evasive or incomplete response is made, the party requesting the discovery is entitled to move for an order compelling disclosure after having made a good faith effort to resolve the dispute by conferring first with the other party.  See Fed. R. Civ. P. 37(a)(1).

The scope of discovery under Rule 26(b) is extremely broad.  See 8 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2007, 36-37 (1970) (hereinafter "Wright & Miller").   The reason for the broad scope of discovery is that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.  To that end, either party may compel the other to disgorge whatever facts he has in his possession."  8 Wright & Miller, § 2007, 39 (quoting Hickman v. Taylor, 329 U.S. 495, 507-08, 67 S. Ct. 385, 392, 91 L. Ed. 2d 451 (1947)).  The Federal Rules distinguish between

discoverability and admissibility of evidence.  FED. R. CIV. P. 26(b)(1), 32, and

33(a)(2).  Therefore, the rules of evidence assume the task of keeping out

incompetent, unreliable, or prejudicial evidence at trial.  These considerations

are not inherent barriers to discovery, however.

As stated above, Federal Rule of Civil Procedure 26 permits discovery of

anything relevant to a claim or defense at issue in the case.  The Advisory

Committee's note to the 2000 amendments to Rule 26(b)(1) provides guidance

on how courts should define the scope of discovery in a particular case:

> Under the amended provisions, if there is an objection that
> discovery goes beyond material relevant to the parties' claims or
> defenses, the court would become involved to determine whether
> the discovery is relevant to the claims or defenses and, if not,
> whether good cause exists for authorizing it so long as it is relevant
> to the subject matter of the action.  The good-cause standard
> warranting broader discovery is meant to be flexible.

> The Committee intends that the parties and the court focus on the
> actual claims and defenses involved in the action.  The dividing
> line between information relevant to the claims and defenses and
> that relevant only to the subject matter of the action cannot be
> defined with precision.  A variety of types of information not
> directly pertinent to the incident in suit could be relevant to the
> claims or defenses raised in a given action.  For example, other
> incidents of the same type, or involving the same product, could be
> properly discoverable under the revised standard. . . . In each
> instance, the determination whether such information is
> discoverable because it is relevant to the claims or defenses
> depends on the circumstances of the pending action.

> The rule change signals to the court that it has the authority to
> confine discovery to the claims and defenses asserted in the
> pleadings, and signals to the parties that they have no entitlement
> to discovery to develop new claims or defenses that are not already
> identified in the pleadings. . . . When judicial intervention is
> invoked, the actual scope of discovery should be determined
> according to the reasonable needs of the action.  The court may
> permit broader discovery in a particular case depending on the

circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested.

See Fed. R. Civ. P. 26(b)(1) Advisory Committee's Notes, 2000 Amendment.

The same Advisory Committee's note further clarifies that information is discoverable only if it is relevant to the claims or defenses of the case or, upon a showing of good cause, to the subject matter of the case. Id. Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings. "Relevancy . . . encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" E.E.O.C. v. Woodmen of the World Life Ins. Soc'y, No. 08:03-CV-165, 2007 WL 1217919, at *1 (D. Neb. Mar. 15, 2007) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)). Discovery requests should be considered relevant if there is any possibility that the information sought is relevant to any issue in the case, and should ordinarily be allowed, unless it is clear that the information sought can have no possible bearing on the subject matter of the action. See Brown Bear v. Cuna Mut. Grp., 266 F.R.D. 310, 319 (D.S.D. 2009) (citations omitted).

The party seeking "discovery must make a threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required." Id. (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1993)). "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its

importance to their case." Id. (citing Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972)).

Once the requesting party has established the relevancy of the discovery it seeks, the burden shifts to the party opposing the discovery to show why the discovery may not be had. Penford Corp. v. Nat'l Union Fire Ins. Co., 265 F.R.D. 430, 433 (N.D. Iowa 2009); St. Paul Reinsurance Co. v. Commercial Fin. Corp., 198 F.R.D. 508, 511 (N.D. Iowa 2000). The opposing party must establish grounds for not providing the discovery that are specific and factual; the party cannot meet its burden by making conclusory allegations as to undue burden, oppressiveness or overbreadth. Burns v. Imagine Films Entm't Inc., 164 F.R.D. 589, 593 (W.D.N.Y. 1996). A party asserting privilege as an obstacle to discovery must: (1) expressly make the claim of privilege, and (2) describe the discovery being withheld in sufficient detail (without revealing the privileged information itself) to allow others to evaluate the validity of the privilege. See FED. R. CIV. P. 26(b)(5)(A).

Just because discovery is not within a party's immediate possession does not mean that the discovery is off-limits. Rule 34 allows discovery of documents and tangible things in a party's possession, "custody" or "control." See FED. R. CIV. P. 34(a)(1). The rule that has developed is that if a party "has the legal right to obtain the document," then the document is within that party's "control" and, thus, subject to production under Rule 34. See 8A Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, Fed. Practice & Procedure, § 2210, at 397 (2d ed. 1994). If a party "has the right, and the

ready ability, to obtain copies of documents gathered or created by its" agents pursuant to work done for the party, "such documents are clearly within the [party's] control." American Soc. for the Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus, 233 F.R.D. 209, 212 (D.D.C. 2006) (citing Poole ex rel. Elliott v. Textron, Inc., 192 F.R.D. 494, 501 (D. Md. 2000); and Poppino v. Jones Store Co., 1 F.R.D. 215, 219 (W.D. Mo. 1940)).

## C.    Judith's Motion to Compel

Judith moves to compel answers to interrogatories and responses to production requests from both defendants. To better understand the defendants' positions, the court notes the defendants' explanation of the origin of the tire (the "subject tire") on Robert's motorcycle when the accident occurred and the relationship between the defendants and the plant where the subject tire was manufactured  (Goodyear Dunlop Tires, France) ("GDTF). GDTF is not a party to this lawsuit.

Defendant Goodyear Tire and Rubber Company is the parent company of Goodyear Dunlop Tires North America ("GDTNA").  Docket 23-2, response no. 16.  Defendant Goodyear Tire and Rubber describes GDTF as its "indirect subsidiary."  Id. [1] GDTNA designed the subject tire, but GDTF manufactured

---

[1] According to Bloomberg Business, "Goodyear Dunlop Tires France SA manufactures and markets tires in France.  The company was incorporated in 1984 and is based in Rueil-Malmaison, France.  Goodyear Dunlop Tires France SA operates as a subsidiary of the Goodyear Tire & Rubber Company." http://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapId=5528630 (last checked August 12, 2015).   It further appears GDTF is subsidiary which is 75% owned by Goodyear Tire and Rubber.  See http://www.sec.gov/Archives/edgar/data/42582/000095012314002054/gt-q42013xex_211.htm (last checked August 12, 2015).

and inspected it.  Id. at response no. 13.  GDTNA then imported, marketed and distributed the subject tire.  Id.

**1.  The nature of the parties' disagreements.**

In her brief, Judith identifies five discrete issues upon which the parties disagree, and which form the bases for the majority of defendants' discovery objections which Judith claims are not well-founded.   They are:  (a) the proper time frame for discoverable information; (b) the scope of the definition of tires which are "substantially similar" to the subject tire, about which information should be discoverable; (c) whether defendants have properly invoked attorney-client privilege; (d) whether defendants have properly invoked trade secret privilege; and (e) whether defendants have properly objected to producing relevant information which is  in their custody or control, but which originates at GDTF.

**(a) The proper time frame for discoverable information.**

The parties agree the subject tire was manufactured at GDTF during the first week of 2007.  See complaint, Docket 1 at p. 3, ¶ 9; defendants brief in response to motion to compel, Docket 25 at p. 1.  Judith's interrogatories and requests for production seek information from defendants either for an unlimited amount of time (see e.g. interrogatory no. 4 which asks whether a claim has "ever" been made); or for a nearly fourteen year time span (see e.g. interrogatory no. 5, which requests information "from January 2000 to the present . . .").[2]

---

[2] Judith served her discovery requests in October, 2014.  See Docket 23-7.

The defendants assert Judith's requests are overbroad and unduly burdensome because the time period for which she requests information is too long. The defendants seek to limit the time frame for which they must produce information to "the week in which the [subject tire] was manufactured (1st week of 2007) and running until . . . August 7, 2010 . . ." (the date of the accident). In other words, Judith wants information either "forever" or for approximately fourteen years, and the defendants are willing to give information for three and ¾ years.

The defendants' position (that information which pre-dates the date upon which the subject tire was manufactured and which post-dates the accident is not discoverable) is not well taken. One of Judith's basic contentions is that defendants designed, engineered, manufactured, inspected and distributed and sold the subject tire

> with the knowledge that it was unfit for use by reasonably expected
> riders and passengers [and that] failure to recall the tire or warn of
> the dangerous propensities of [the] D402 tire when used on the
> 2003 Ultra Classic after it knew or should have known of the
> defects and dangers, failure to manufacture the D402 tire free of
> defects, and failure to exercise reasonable care to discover the
> defect all exhibits an entire lack of care and conscious disregard
> for the safety of humans who use [defendants'] products.

See complaint, Docket 1 at ¶ 17. What the defendants knew *before* the date the subject tire was manufactured, therefore, is relevant to the claims contained in Judith's complaint. "Evidence after the date of injury may also be relevant to the unreasonably dangerous design element of the plaintiff's case." Smith v. Gorilla, Inc., 2010 WL 4286246 at *5 (D. Montana, October 21, 2010) (citation omitted, punctuation altered). See also, Hartsock v. Goodyear

15

<u>Dunlop Tires North America</u>, 2013 WL 6919715 (D. South Carolina, Nov. 22, 2013). In <u>Hartsock</u>, the plaintiff sought information from Goodyear about its tires for a time frame including both before the subject tire was manufactured and after the date of the accident. <u>Id.</u> at *6. Goodyear, as it does in this case, sought to limit discovery to information beginning on the date the subject tire was manufactured and ending on the date of the accident. <u>Id.</u> The <u>Hartsock</u> court granted discovery for a seven-year period, which incorporated both pre-subject tire manufacture and post-accident time. <u>Id.</u> at *7. The court reasoned:

> While an accident occurring after the one under investigation might not have been relevant to show defendant's prior knowledge or notice of a product defect, it may have been highly relevant to causation . . .While only earlier accidents can be relevant to the issue of notice, causation is an issue affected only by the circumstances and the equipment, and is not related to the date of the occurrence.

<u>Id.</u> (citations omitted, punctuation altered).

That both pre-manufacture and post-accident information is discoverable does not end the matter, however. Because the parties do not agree on an appropriate time frame for discoverable information, in resolving their dispute the court must take the following into consideration pursuant to Fed. R. Civ. P. 26(b)(2)(C): the burden or expense of the discovery and whether it outweighs the likely benefit considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake, and the importance of the discovery in resolving the issues.

The court is mindful that the production of several years' worth of information will be an expensive endeavor.  In this instance, however, the benefit outweighs the burden.  The Plaintiff has alleged the defendants' tires contain defects which caused the death of her husband and which caused her serious injuries.  She further alleges these defects existed before the subject accident, that the defendants knew of the defects, but that defendants have not yet recalled the subject tire, despite their previous and continuing knowledge of the subject tire's defects.  The issues at stake, therefore, are important and the information Judith seeks is crucial to resolving those issues.  The court likewise notes that Goodyear has sufficient resources to comply with an order to produce seven years' worth of records.  See http://www.marketwatch.com/investing/stock/gt/financials (last checked August 13, 2015) (illustrating Goodyear's 2010 through 2014 gross revenue, gross income, and net income).  The court therefore orders the defendants to produce information beginning  five years before the subject tire was manufactured (from January, 2002) through two years after the date of the accident (through August 7, 2012).

**(b) The scope of the definition of tires which are "substantially similar" to the subject tire.**

The parties also disagree as to their positions regarding which D402 tires the defendants should be required to disgorge information.   Judith wants information about *all* D402 tires, whether they are front tires, rear tires, tires with the same or different load capacities, and regardless of where they were manufactured.  The defendants only want to produce information about the

exact D402 tire that was on Robert's motorcycle—meaning the D402 rear tire size MT90B16, with the exact same load speed, tread depth, width, diameter, and which were manufactured in the same plant as the subject tire (Montlucon, France).   Each of these positions is without merit.

Plaintiff and defendants cite <u>Hofer</u>, 981 F.2d at 377 in support of their positions regarding the production of information about D402 tires.  In <u>Hofer</u>, the plaintiff was injured when the Mack truck in which he was riding rolled. <u>Id.</u> at 379.  Mr. Hofer was asleep in the sleeper compartment at the time of the accident and was rendered a paraplegic as a result of the rollover accident.  <u>Id.</u> His theory was that a panel in the sleeper compartment dislodged, allowing a tool box to eject from a storage compartment into the sleeper compartment, causing his injuries.  <u>Id.</u> at 380.  In the course of discovery he sought information about the design of the truck in which he was riding (Model MH) as well as predecessor designs (Models F and W).  <u>Id.</u>  The <u>Hofer</u> court acknowledged

> While the standard of relevance in the context of discovery is broader than in the context of admissibility (Rule 26(b) clearly states that inadmissibility is no grounds for objection to discovery), this often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery.  Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case.

<u>Id.</u> (citations omitted).  The court further noted there was no black letter rule of law regarding discovery of other models in products liability litigation, other than to allow discover of similar or identical models.   " 'Generally, different models of a product will be relevant if they share with the accident-causing

18

model those characteristics pertinent to the legal issues raised in the litigation.' Rather, courts have undertaken a fact specific determination of the extent of the similarities or dissimilarities, and have inquired about the basis for the discovery request." Id. at p. 380-81, (citing Fine v. Facet Aerospace Products Co., 133 F.R.D. 439, 441 (S.D.N.Y. 1990)). In Hofer, the court noted the plaintiff's experts were able to obtain information about other models of the truck from other sources for comparison purposes to the accident truck. Id. at 380. The issue was whether the burden of producing "further design minutiae of those earlier models" was necessary. Id. at 381. The court found Mr. Hofer made no specific allegations to support the need for further discovery, but noted

> Discovery may be allowed where a plaintiff alleges that the defendant was on notice of a defect, that an alternative design was feasible and the defendant had knowledge of the same, that a defendant did not eliminate a previously occurring defect in design, or that previous, similar accidents related to the accident at issue had occurred.

Id. This is the claim that Judith makes in this case, and which unlocks the door to further discovery.[3]

The Hartsock court cited Hofer in fashioning its order to the plaintiff's motion to compel. Hartsock, 2013 WL 6919715 at *8. In Hartsock, a Goodyear

---

[3] The defendants repeatedly assert Judith's motion fails to satisfy her threshold burden of showing information as to "all" D402 tires is relevant to her allegations. See Docket 25, p. 8 & 9. With that proposition, the court agrees. Nevertheless, because Judith claims defendants were on notice of a defect, that and the defendants had knowledge of the same, but failed to warn of it or recall the product, Judith is entitled to discover information about other substantially similar (though admittedly not identical) D402 rear tires for comparison purposes.

representative submitted an affidavit comparable to Mr. Dancy's affidavit in this case, which explained all the reasons no other tire models were substantially similar to the accident tire.  Compare, <u>Hartsock</u> at *6 and *8 with Docket 25-3.    In <u>Hartsock</u>, one of the plaintiff's theories was that the inner liner of the tire was too thin by design, and became even thinner during a faulty manufacturing process.  <u>Id.</u> at *8.  The court rejected Goodyear's attempt to narrow the plaintiff's discovery to information about the accident tire only, because the Goodyear representative's affidavit "contains no information about how the inner liners in these ten tires are similar or different to each other.  At this point, there is no way for [the court] to conclude the inner liners are not substantially similar.  The [court] therefore concludes production pertaining to all ten G670RV tires is warranted."  <u>Id.</u>

This court reaches a similar conclusion.  Mr. Dancy's affidavit explains that "D402" is merely a brand name that includes tires manufactured to different sizes, load/speed indexes, diameters, width, tread patterns, tread depths and maximum loads.  Docket 25-3 at ¶ 9.  He further explains the designation of D402 tires includes both front tires, designed to steer the motorcycle, and rear tires, designed to support the passenger load.  <u>Id.</u> at ¶ 10.  The D402 MT90B16 front and rear tires have different load/speed indexes, overall diameters, tread depths, tread patterns and maximum loads.  <u>Id.</u> at ¶ 11.  Mr. Dancy explains  the D402 MT90B16 rear tire has a different load/speed index, overall diameter, tread depths, overall width, and maximum load than the D402 MU85B15 rear tire.  <u>Id.</u> ¶ 12.  Mr. Dancy attached a spec

chart to his affidavit which shows the differences and similarities between the D402 tires. Id. ¶13.[4] Finally, Mr. Dancy explained that though the "skim stock and rubber sources" used by GDTF and GDTNA are similar, their application methods are different. Id. at ¶ 15. Mr. Dancy did not elaborate on this statement.

The defendants cite several cases for the proposition that Judith's request for information about "all" D402 tires is too broad. See e.g. Hajek v. Kuhmo Tire Co., 2010 WL 503044 (D. Neb., Feb. 8, 2010); Bradley v. Cooper Tire & Rubber, 2006 WL 3360926 (S.D. Miss., Nov. 20, 2006). In both Hajek and Bradley the courts limited the defendants' obligation to provide information relative to the accident tire only. Hajek, 2010 WL 503044 at *8; Bradley, 2006 WL 3360926 at *3. The court agrees that in this case, Judith's request for information about *all* D402 tires is likewise too broad. The court cannot agree, however, that the defendants' unilateral decision to limit discovery to the accident tire only (i.e. the identical product) is appropriate in this instance. See e.g. In Re: Cooper Tire & Rubber, 568 F.3d 1180 (10th Cir. 2009).

In Cooper, the plaintiff protested the defendants' proposed definition of "substantially similar" tires was "tantamount to . . . identical." Id. at 1185 (punctuation altered). The district court agreed, and concluded that because the plaintiff's theory of the case included the argument that Cooper was on

---

[4] The spec chart reveals there are only two rear D402 motorcycle tires, the model which was on Robert's motorcycle---the MT90B16--and the MU85B15. The reason there are so many entries for rear tires on the spec chart is the various choices for the appearance of the sidewall. See Docket 25-3 at p. 7.

notice of the tread separation problem, information about tires manufactured to specifications other than the accident tire could tend to lead to discoverable evidence.  Id. at 1191.  The Tenth Circuit acknowledged that the plaintiffs identified five specific design and manufacturing flaws which they alleged caused the accident tire to fail, and claimed that though Cooper had been on notice of the problems, had made no design changes and had issued no warnings.  Id. at 1193.  The Tenth Circuit agreed that the district court's allowance of discovery pertaining to tires other than those matching the exact specifications of the accident tire was not an abuse of judicial discretion.  Id.

> A party seeking discovery should not be limited by its opponent's theory of the case in determining what is discoverable.  Cooper Tire & Rubber Co. , 568 F.3d at 1192.  What is 'relevant to the claims or defenses depends on the circumstances of the pending action.'  Fed. R. Civ. P. 26, Advisory Committee Note (2000).  Further, the substantial similarity rule does not require identical products; nor does it require the court to compare the products in their entireties.  Smith v. Ingersol-Rand Co., 214 F.3d 1235, 1248 (10th Cir. 2000).  The rule only requires substantial similarity among those variables which are relative to the plaintiff's theory of defect.  See Four Corners Helicopters, Inc., 979 F.2d at 1440 (the precise degree of similarity required to ensure the relevance of another accident or product depends on the theory of defect underlying the case).

Hadjih v. Evenflo Company, Inc., 2011 WL 3684807 at * 5 (D. Colo., August 23, 2011).

Because of their differing fundamental purposes (steering the motorcycle versus supporting the passenger load) the D402 front and rear tires are substantially different.  Judith makes no claims in her lawsuit about steering insufficiencies or problems with the front tire, so production of information about D402 front tires would not be useful.  But at the base of Judith's claims

is the premise that the D402 rear tire on Robert's motorcycle did not properly support the passenger load.

As to the D402 rear tires, however, Mr. Dancy's affidavit and accompanying spec chart, compared to the plaintiff's complaint, reveals the defendants' protestations suffer from the same infirmities as did the expert's affidavit in Hartsock.  Though the court recognizes there are differences between the subject D402 MT90B16 rear tire and the D402 MU85B15 rear tire, it is not at all clear (at least yet) whether those differences have anything at all to do with the claims in this lawsuit.  Neither Mr. Dancy's affidavit nor the spec sheet address whether the D402 MT90B16 and the D402 MU85B15 share common (1) bonding methods to the carcass ply; (2) amount of rubber applied to the cords; (3) adhesion method of the polyester carcass to the rubber; and (4) amount of mold flashing at the bead.  These are the design and manufacturing defects alleged in Judith's complaint.

Additionally, Mr. Dancy's vague claim that the "application methods are different" in the Montlucon, France plant is wholly insufficient to persuade the court that the D402 rear tires manufactured in France, (though designed by GDTNA), are not substantially similar to the D402 rear tires designed by GDTNA which were manufactured elsewhere.   See e.g. Blundon v. Goodyear Dunlop Tires North America, 2012 WL 5473069 (W.D.N.Y. Nov. 9, 2012).  In that case, the plaintiffs similarly allege their D402 rear tire, manufactured in

*GDTNA's Tonawanda, New York plant*[5] suddenly deflated, causing their Harley Davidson motorcycle to crash.  Id. at *1-2.  One of the plaintiffs' theories of liability in Blundon is a "lack of adhesive dip on the polyester carcass cords" (Id. at *5) which is very similar to one of Judith's theories of liability in this case.  The location of the manufacturing plant, therefore, is likewise not enough to persuade the court—at least at this phase of the litigation, that the defendants' D402 rear tires manufactured someplace other than Montlucon, France are substantially different enough to preclude discovery of information about them in this lawsuit.  It is therefore the order of the court that defendants produce information about all D402 MT90B16 rear tires and D402 MU85B15 rear tires for the above-referenced time frame, regardless of where they were manufactured.

### (c) Whether defendants have properly invoked attorney-client privilege.

In her brief, Judith asserted the defendants "object to a number of production requests on the basis of privileged information" and that "to date, defendants have neither provided factual support for these claims nor a privilege log."  See Docket 23 at p. 6.  Judith filed her brief on March 31, 2015.  In their brief which was filed on April 24, 2015, however, defendants explain they in fact produced a privilege log on April 15, 2015 and state "it is unclear whether this resolves [Judith's] dispute."  See Docket 25, p. 15.  Judith did not

---

[5] The Blundon case cited by the court does not specify whether the D402 rear tire on the Harley Davidson motorcycle driven by Mr. Blundon was a D402 MT90B16 or a D402 MU85B15.  The court surmises, however, that this information is probably contained in the complaint in that case.

file a reply on her motion.  It is therefore ordered the plaintiff shall advise the

court, on or before 14 days from the date of this order, whether further court

intervention is required regarding the sufficiency of defendants'

responses/objections which rely on attorney-client privilege and/or the

privilege log which the defendants have produced.

### (d) Whether defendants have properly invoked trade secret privilege.

Judith also asserts defendants have improperly relied upon trade secret

or other corporate confidentiality claims without citation to proper authority.

Judith cites as examples request for production numbers 6 and 7.[6]  Though

Judith did not cite request for production number 37 defendants discussed it

in addition to request numbers 6 and 7 in their brief.  The defendants respond

in part that the information Judith requests is a trade secret but that they

would produce the requested information for the "subject tire for the subject

time frame" after an appropriate protective order is entered by the court. See

Docket 25 at p. 18.

Judith asserts in her brief "[d]efendants  . . . have not, to date, provided

an agreeable protective order."  The defendants, however, explain that defense

counsel provided a draft protective order to Judith's counsel for review, but

that a response was never received.  See Docket 25, p. 18.  After briefing was

---

[6] Defendants based their objection to responding to Request for production number 7 on overbreadth grounds (time and substantial similarity) which have already been addressed above, in addition to trade secret grounds.  Defendants did not, however, offer to produce the information requested in request for production number 7 upon the entry of an appropriate protective order.   They do make such an offer as to request numbers 6 and 37.

completed, the parties stipulated to a protective order, which has now been entered by Judge Piersol. See Dockets 28 & 30. It is therefore unclear to the court whether there remains any dispute for the court to resolve regarding the documents which defendants declined to produce based upon their trade secret objections. It is therefore ordered the plaintiff shall advise the court, on or before 14 days from the date of this order, whether further court intervention is required regarding the sufficiency of defendants' responses/objections which rely on trade secret privilege and/or the necessity for the entry of a protective order.

### (e) The defendants' duty to provide information in the possession of Goodyear Tire and Rubber's (indirect) subsidiary, non-party GDTF.

Finally, Judith asserts the defendants have improperly resisted producing information which she claims should be discoverable because it is within the defendants' custody or control pursuant to Rule 34. Specifically, the defendants take the position that they should not be required to produce information which is in the possession of Goodyear Tire and Rubber's "indirect subsidiary," non-party GDTF. See, Docket 23-2, p. 2, Docket 23-3, p. 2, Docket 23-4, p. 2, Docket 23-5, p. 2 (all objecting to Judith's definition of the terms "Goodyear," "Yourself," and "Your," as overbroad and unduly burdensome because it is defined as including "directors, shareholders, officers, agents, owners, parents, subsidiaries and affiliates.") The defendants profess their answers are made "on behalf of itself and not any other person or entity." See, Docket 23-2, p. 2, Docket 23-3, p. 2, Docket 23-4, p. 2, Docket

23-5, p. 2.  Defendants further profess that their compliance with Judith's discovery requests by revealing which GDTF employees were involved in the manufacturing and/or inspection process might violate French privacy law. See e.g. Docket 23-2, p. 7, Docket 23-4, p. 6, Docket 25 at p. 17, Docket 23-8 at p. 3.

Just because discovery is not within a party's immediate possession does not mean that the discovery is off-limits.  Rule 34 allows discovery of documents and tangible things in a party's possession, "custody" or "control." See FED. R. CIV. P. 34(a)(1).  The rule that has developed is that if a party "has the legal right to obtain the document," then the document is within that party's "control" and, thus, subject to production under Rule 34.  See 8A Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, Fed. Practice & Procedure, § 2210, at 397 (2d ed. 1994).  If a party "has the right, and the ready ability, to obtain copies of documents gathered or created by its" agents pursuant to work done for the party, "such documents are clearly within the [party's] control." American Soc. for the Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus, 233 F.R.D. 209, 212 (D.D.C. 2006) (citing Poole ex rel. Elliott v. Textron, Inc., 192 F.R.D. 494, 501 (D. Md. 2000); and Poppino v. Jones Store Co., 1 F.R.D. 215, 219 (W.D. Mo. 1940)).  "The party seeking production of documents bears the burden of proving that the opposing party has the control required under Fed. R. Civ. P. 34(a)." Super Film of America, Inc. v. UCB Films, Inc., 219 F.R.D. 649, 653 (D. Kansas, 2004) (citation omitted).

As explained above, GDTF—though not a named defendant-- is a subsidiary which is 75% owned by defendant Goodyear Tire and Rubber. "A discoveree cannot avoid a proper discovery request by utilizing record keeping which conceals rather than discloses. . . . Furthermore, the non-party status of wholly owned subsidiaries does not shield discoverable documents in their possession from production." In Re: Richardson-Merrell, Inc., 97 F.R.D. 481, 483 (S.D. Ohio 1983) (citations omitted). See also Cormack v. United States, 117 Fed. Cl. 392 (2014). In Cormack, Mr. Corkmack sought production of documents in the possession of "Solystic" a wholly owned but indirect French subsidiary of "Northrup Grumman" the American parent company of both "Solystic" and "Systems," the company from whom Cormack sought production of the documents. Id. at 401.

> Simply stated, the issue is whether Systems can be compelled to produce documents currently in the possession of its parent corporation's foreign indirect subsidiary, a nonparty in this action. RCFC 34(a) provides that a party may serve a request for production of documents 'in the responding party's possession, custody or control.' RCFC 34(a)(1). Control is construed broadly, and it 'does not require that the party have legal ownership or actual physical possession of the documents at issue, but rather the right, authority, or practical ability to obtain the documents from a nonparty to the action.' In essence, the inquiry is whether the party has access to the non-party's documents.

Id. The court noted factors which influenced whether Systems should be required to produce documents in the possession of Solystic: (1) corporate structure;[7] and (2) the non-party's connection to the transaction at issue and

---

[7] The court noted that this factor is usually dispositive of control when the parent corporation is a party to the lawsuit and the moving party is seeking discovery of the parent's wholly owned subsidiary. Id. at 403. If the corporate

the degree that the nonparty will benefit from the outcome of the case.  Id. at

403.  Ultimately, the court found that because Systems and Solystic worked

closely together to develop the technology which was at the heart of the

lawsuit, the collaboration "equips Systems both with access to Solystic's

documents and with the requisite power to obtain them, rendering Systems

able and required to comply with Mr. Cormack's discovery requests . . ."  Id. at

404.

    In this case, however, the discussion is wholly academic.  It appears non-

party GDTF is not a wholly owned subsidiary but is a 75% owned subsidiary of

defendant Goodyear Tire and Rubber.  And neither party has provided the

court with any information about the other factors which would allow an

informed decision as to the amount of defendants' access to or control over

documents in the possession of non-party GDTF.  Therefore, it is ordered that,

on or before 14 days from the date of this order, the parties shall submit

simultaneous briefs discussing defendants' duty to produce information in the

possession of non-party GDTF in response to plaintiff's discovery requests.

    Finally, the defendants' assertion that it cannot produce information

from GDTF because to do so might violate French privacy laws is rejected.

First, the defendants did not explain in their responses to plaintiff's discovery

---

structure is not dispositive, the moving party must point to additional factors
indicative of control before production can be compelled.  Id.  Other factors to
consider are:  Common relationships such as ownership of the non-party,
overlapping directors, officers or employees or financial relationships that bind
the party and the non-party.  Id. at 403, n. 11.  Sufficient control has been
found between parent corporations and their wholly owned subsidiaries or
"when they own more than 50% of their foreign subsidiary's stock."  Id.
(citation omitted).

requests the French privacy law upon which they relied. "Federal court examination of foreign law is governed by Rule 44.1 of the Federal Rules of Procedure. Rule 44.1 makes it very clear that a party wishing to raise an issue about foreign law must give notice in writing . . ." U.S. Commodity Futures Trading Comm'n v. Trade Exchange Network Ltd., 61 F.Supp.3d 1 (D. D.C. 2014). Defendants explained they relied on the French privacy law only *after* plaintiff's counsel wrote requesting further responses to Judith's discovery requests.

Second, the defendants' position has otherwise been soundly rejected. The court has reviewed the Deliberation No. 2009-474 as referenced in Docket 23-8. It cites a French "shielding" or "blocking" law and invokes the Hague Convention. The defendants in Cormack likewise cited a "French blocking statute, which contemplates penalties for French individuals who circumvent the Hague Convention and disclose information for use in foreign judicial proceedings." Cormack, 117 Fed. Cl. 392, 402, n.10. The Cormack court noted, however, that " 'it is well settled that such statutes do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute.' " (citing Societe Internationale Pour Participations Industrielles et Comerciales, SA v. Rogers, 357 U.S. 197, 204-06 (1958)). The Cormack court further cited Rogers in noting that when a party claims foreign law prevents disclosure, a particularized analysis should occur, but because the party claiming the protection of the foreign law did not endeavor to support such an analysis, the

court declined to consider the claim that French law barred disclosure.  Id.  See also Alcan International Ltd. v. SA Day Manufacturing Co., Inc.,, 176 F.R.D. 75 (W.D. N.Y. 1996) ("the ordinary discovery provisions of the Federal Rules of Civil Procedure, rather than the more complicated procedures of the Hague Convention, generally apply to the discovery of information in the custody or control of a party's foreign affiliate.") (citing Rogers).

"Ultimately the district court possesses wide discretion to proceed in whatever manner it deems most effective."  Linde v. Arab Bank, PLC, 706 F.3d 92, 109 (7th Cir. 2013) (citing Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court, 482 U.S. 522, 543(1987)).  In exercising that discretion, where a party claims foreign law prevents disclosure, the Supreme Court in Aerospatiale called for a "particularized analysis" pursuant to the factors now articulated in the Restatement (Third) of the Foreign Relations Law of the United States to determine whether the court should order production of the documents.  Aerospatiale, 482 U.S. at 543, 544, n. 28.  In Aerospatiale, the plaintiffs in a personal injury action arising out of an airplane crash which occurred in Iowa sought discovery of information from the defendant French plane manufacturer.  Id. at 525.  The French manufacturer asserted the Hague Convention was the "exclusive procedure" by which the information could be obtained and refused to comply with pre-trial discovery requests.  Id. at 526. The United States Supreme Court determined the Hague Convention is not the exclusive procedure for obtaining discovery within the territory of a foreign country.  Id. at 529.  The Court explained the Convention is a "permissive

supplement" rather than a "pre-emptive replacement" for other means of obtaining evidence located abroad.  Id. at 536.  It likewise rejected the French "blocking statute" as a reason to deprive American courts of the power to order a party, otherwise subject to their jurisdiction, to produce evidence even though the act of production might violate the blocking statute.  Id., at p. 544, n. 29.  In the end, the court concluded that some discovery requests are simply more intrusive than others and

> [e]ven if a court might be persuaded that a particular document request was too burdensome or too intrusive to be granted in full, with or without an appropriate protective order, it might well refuse to insist upon the use of Convention procedures before requiring responses to simple interrogatories or requests for admissions. The exact line between reasonableness and unreasonableness in each case must be drawn by the trial court, based on its knowledge of the case and of the parties and governments whose statutes and policies they invoke.

Id. at 545-46.

The interrogatories and requests for production which drew the defendants' objections based upon the French privacy and confidentiality laws in this case asked for the names, job titles, and contact information for employees involved in quality control manufacturing matters at the Montlucon, France plant.  See Docket 23-2 p. 6, Docket 23-4, p. 6.  First and foremost, the defendants have not cited any specific French law which prohibits the dissemination of this information.  Applying the Aerospatiale, rationale, the court is not persuaded that Judith's request for such information is overly burdensome or intrusive nor that it necessitates invoking the Hague

Convention, assuming the plaintiff otherwise shows it is within the defendants' custody or control.

## CONCLUSION and ORDER

Based on the foregoing law, facts and analysis, it is ORDERED that Plaintiff's motion to compel [Docket No. 22] is granted in part and denied in part as follows:

(1) In response to plaintiff's Interrogatories and Requests for Production of Documents, defendants shall produce information for the time period beginning on January 1, 2002 and ending on August 7, 2012;

(2) In response to plaintiff's interrogatories and request for production of documents, defendants shall produce information regarding all D402 MT90B16 rear tires and all D402 MU85B15 rear tires, for the specified time frame, regardless of where they were manufactured;

(3) Plaintiff shall advise the court, on or before 14 days from the date of this order, whether further court intervention is required regarding the sufficiency of defendants' responses/objections which rely on attorney-client privilege and/or the privilege log which the defendants have produced.

(4) Plaintiff shall advise the court, on or before 14 days from the date of this order, whether further court intervention is required regarding the sufficiency of defendants' responses/objections which rely on trade secret privilege and/or the necessity for the entry of a protective order.

(5) On or before 14 days from the date of this order the parties shall submit simultaneous briefs discussing defendants' duty to produce information in the possession of non-party GDTF in response to plaintiff's discovery requests.

DATED this 17th day of August, 2015.

BY THE COURT:

_____
VERONICA L. DUFFY
United States Magistrate Judge