FILED

JUL 27 2017

[signature] CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

**************************************************************************

|  |  |  |
|---|---|---|
| JUDITH McALLISTER-LEWIS, individually, and as Special Administrator of the Estate of Robert L. Lewis, Deceased, | * * * * | CIV 14-4103 |
| Plaintiffs, | * * * | |
| vs. | * * | MEMORANDUM OPINION ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, Doc. 80, 83 |
| GOODYEAR DUNLOP TIRES NORTH AMERICA, LTD., an Ohio limited liability company; and THE GOODYEAR TIRE & RUBBER COMPANY, an Ohio corporation, | * * * * * * | |
| Defendants. | * * | |

**************************************************************************

The Court's Order, Document 124, is withdrawn and replaced by this Memorandum Opinion. Defendants have moved for summary judgment on seven claimed causes of action. The eight claimed causes of action are: First, Strict Products Liability - Design Defect; Second, Strict Products Liability - Manufacturing Defect; Third, Negligence; Fourth, Failure to Warn - Strict Liability; Fifth, Negligent Failure to Warn; Sixth, Breach of Implied Warranty of Merchantability; Seventh, Breach of Implied Warranty of Fitness; and Eighth, Loss of Consortium.

A summary of the facts is that Plaintiff Judith McAllister-Lewis was a passenger on the 2003 Harley-Davidson Ultra Classic Electra Glide Motorcycle being driven by her husband, the decedent, Robert L. Lewis. While traveling west on Interstate 90 in South Dakota on August 7, 2010, the rear tire failed. The tire was manufactured by Goodyear Dunlop Tires France, a non-party. The decedent lost control of the motorcycle and died as a result of the injuries from the resulting crash. Judith McAllister-Lewis also suffered injuries from the crash. Ms. McAllister-Lewis and her husband were pulling a two wheel trailer that had a cooler affixed to the tongue of the trailer ahead of the box on the trailer.

The relationship of the non-party manufacturer of the tire to the Defendants is as follows: Defendant The Goodyear Tire & Rubber Company (Goodyear Tire & Rubber) in Document 32-1 submitted sworn information concerning the ownership of Goodyear Dunlop Tires France (Goodyear Dunlop France), the manufacturer of the tire in question. The result after going through ownership concerning Goodyear Dunlop Tires France is that Defendant The Goodyear Tire & Rubber Company, through other companies owns 75% of Goodyear Dunlop Tires France and Defendant Goodyear Dunlop Tires North America, Ltd., (Goodyear Dunlop) now Sumitomo Rubber Industries, Ltd. owns 25% of Goodyear Dunlop Tires France. The intervening holdings that result in Defendant The Goodyear Tire & Rubber Company owning 75% of Goodyear Dunlop Tires France involved: Property Leasing S.a.r.l.; Goodyear S.A. in Luxembourg; and Goodyear Canada Inc.

## DISCUSSION

Even though 75% of Goodyear Dunlop France is ultimately owned by Defendant Goodyear Tire & Rubber, the evidence in the case is that Goodyear Tire & Rubber did not design, import, distribute or sell the tire in question that says "Dunlop" on the sidewall as does the limited warranty card accompanying the sale of the tire. 75% ultimate ownership of another company, standing alone, does not without other factors, warrant a piercing of the corporate veil to bring potential liability to the parent company.

The Court will separately consider each claim for summary judgment as to each Defendant. Defendant Goodyear Dunlop had been purchased by Sumitomo Rubber USA, LLC. The operative facts of this case all took place while it was still Goodyear Dunlop, and for clarity the Court will continue to refer to the corporation by that name.

The first claimed cause of action is strict liability for design defect. Defendants argue Plaintiffs do not present evidence of a claim on that basis. Plaintiffs agree and that claim will be dismissed as to both Defendants.

2

The second claimed cause of action is for strict liability for a manufacturing defect. Neither of the Defendants manufactured the tire in question. The two Defendants do ultimately own the manufacturer of the tire, Goodyear Dunlop France, 75% being owned by Goodyear Tire & Rubber, and 25% being owned by Goodyear Dunlop. Goodyear Tire & Rubber did not import, distribute or sell the tire while Goodyear Dunlop did import, distribute and sell this tire at wholesale. SDCL 20-9-9 in many situations precludes strict liability claims for a middleman, referred to in SDCL 20-9-9 as a distributor, dealer, wholesaler or retail seller. Plaintiffs urge the adoption of the apparent manufacturer doctrine as stated in RESTATEMENT (SECOND) OF TORTS § 400 (1965). That statement has been superseded by RESTATEMENT (THIRD) OF TORTS: Products Liability § 14 (1998). The doctrine as now stated in § 14 is that "One engaged in the business of selling or otherwise distributing products who sells or distributes as its own a product manufactured by another is subject to the same liability as though the seller or distributor were the product's manufacturer." The South Dakota Supreme Court has not ruled upon the conflict between SDCL 20-9-9 and the apparent manufacturer common law doctrine. SDCL 20-9-9 was enacted in 1979. It provides that a product's distributors, wholesalers, dealers or sellers are immune from strict liability except for manufacturers or those who knew, or in the exercise of ordinary care, should have known, of the latent defective condition of the product.[1] The Court finds that SDCL 20-9-9 is with regard to strict liability contrary to the apparent manufacturer doctrine and thus the apparent manufacturer doctrine with regard to strict liability would likely not be adopted if and when that issue is presented to the South Dakota

---

[1]SDCL 20-9-9 provides: No cause of action based on the doctrine of strict liability in tort may be asserted or maintained against any distributor, wholesaler, dealer, or retail seller of a product which is alleged to contain or possess a latent defective condition unreasonably dangerous to the buyer, user, or consumer unless said distributor, wholesaler, dealer, or retail seller is also the manufacturer or assembler of said product or the maker of a component part of the final product, or unless said dealer, wholesaler, or retail seller knew, or, in the exercise of ordinary care, should have known, of the defective condition of the final product. Nothing in this section shall be construed to limit any other cause of action from being brought against any seller of a product.

The statute presents some questions with regard to strict liability design and strict liability warning claims. *See* Dugan, "Reflections on South Dakota's Trifurcated Law of Products Liability", 28 S.D. L. REV. 259, 271-276 (Spring, 1983). The strict liability design and strict liability warning claims are dismissed for lack of evidence so those conceptual difficulties are not presented in this case.

Supreme Court. The apparent manufacturer doctrine is set forth in the South Dakota Pattern Jury Instruction No. 20-130-90.[2] The South Dakota Pattern instructions do not have the force of law but are helpful and persuasive and all commonly used by this Court and the state courts. There is no South Dakota statutory or case law to support the application of the apparent manufacturer doctrine in South Dakota, nor is there any law indicating it should not be applied other than SDCL 20-9-9. The Pattern Jury Instruction for support only states "Reference: *Engberg v. Ford Motor Co.*, 87 S.D. 196, 205 N.W.2d 104 (1973) RESTATEMENT OF THE LAW (SECOND) TORTS, § 400." In *Engberg v. Ford Motor Co.* the South Dakota Supreme Court only recognized for the first time a strict liability cause of action. The 1979 enactment of SDCL 20-9-9 was clearly a legislative response and a limiting of the strict liability doctrine in South Dakota.

Plaintiffs did not sue the manufacturer of the tire in question. Plaintiffs now urge that this Court should apply the apparent manufacturer doctrine to the current Defendants, neither of whom manufactured the tire. The South Dakota Supreme Court has never considered whether the apparent manufacturer doctrine is a part of the common law of South Dakota. It is clear that SDCL 20-9-9 in many instances precludes the existence of an apparent manufacturer doctrine when considering strict liability claims against a middleman. In the present case, this Court in a previous Order, now withdrawn, assumed the claimed defect was a latent defect and dismissed the strict liability against manufacturer claim. Under reconsideration, the Court recognized that whether or not the claimed defect was "latent" within the meaning of SDCL 20-9-9 was a jury question. Whether the claimed defect is "latent" within the meaning of SDCL 20-9-9 depends upon the situation presented to the middleman distributor, Goodyear Dunlop, when the tire was in its possession, not the situation at the time of manufacturer by Goodyear Dunlop France. *See Lindholm v. BMW of North America, LLC,* 2017 WL 2838215, at *3 (8th Cir. July 3, 2017).[3] Plaintiffs argue on the basis of the apparent

---

[2] The jury instruction provides: "One who represents as the person's own product, a product manufactured by another, has the same duty of care as that of the manufacturer."

[3] Discussing SDCL 20-9-9, the Eighth Circuit stated:
As an independent ground for granting summary judgment on the strict-liability claim, the district court relied on a South Dakota statute that provides that a product distributor cannot be held

manufacturer doctrine that whether or not the claimed defect was "latent" should be decided based on the situation at the time of manufacture. There is expert opinion as to the manufacturing process that would support a conclusion that at the time of manufacture the claimed defect was not latent. There is, however, no expert opinion to support a conclusion that the defect was other than latent at the time the tire was with the middleman, Goodyear Dunlop. In fact, Plaintiffs' expert testified:

> Q:  Okay. And [what] you're telling me is: You wouldn't have expected Lewis or Rosholt or anyone else in the chain, the distribution chain, to have detected the cord shadows, correct?
>
> A.  Correct.

Statement of Undisputed Facts ¶ 19 (Docket #85).

---

strictly liable unless the distributor "knew, or, in the exercise of ordinary care, should have known, of the defective condition of the final product." S.D. Codified Laws § 20-9-9. The time for assessing knowledge that a product is defective is the time that the product was first sold; knowledge acquired later is irrelevant. *First Premier Bank v. Kolcraft Enters., Inc.*, 686 N.W.2d 430, 452 (S.D. 2004), *superseded on other grounds by rule*, Supreme Court Rule 06–67, *as recognized in Karst*, 878 N.W.2d at 610 n.4.

The Lindholms point out that BMW had received two reports of their jacks failing and injuring others, giving BMW either knowledge or constructive knowledge that they were defective. But these incidents occurred after the car here was sold in 1997, so they do not reveal anything about BMW's knowledge at the relevant time. The Lindholms also maintain that BMW should have known that the jack was defective for the reasons given by the Lindholms' expert. We reject their attempt to circumvent § 20-9-9; a claimant cannot prove that a distributor knew or should have known that a product was defective just by proving that the product was defective. Otherwise the application of the statute would rise and fall with the plaintiff's proof on defectiveness, relegating the statute to superfluity. If the expert had identified some relevant event that occurred before the sale of the product, or explained how the jack was so manifestly defective that anyone (or any manufacturer) would have to realize that it was, then maybe the Lindholms' approach would work. But where the expert merely states reasons why he concludes that a product is defective, we cannot simply impute the substance of the opinion to the distributor. We therefore agree with the district court that § 20-9-9 provides an independent ground for summary judgment on the strict-liability claim. Since the record taken as a whole could not lead a rational jury to find for the Lindholms on this claim, summary judgment was appropriate.

*Lindholm,* 2017 WL 2838215, at *3.

There is therefore no jury question to present as to whether the tire had a non-latent defect when it was in the possession of the middleman, Goodyear Dunlop.

There is still another way that Plaintiffs could proceed in strict liability against the middleman, Goodyear Dunlop. SDCL 20-9-9 goes on to provide that even if the claimed defect is latent, the strict liability claim can still proceed if "said dealer, wholesaler, or retail seller knew, or, in the exercise of ordinary care, should have known, of the defective condition of the final product." There is no evidence that Goodyear Dunlop knew of any defective condition of the tire. Nor is there any evidence that Goodyear Dunlop should have known of the claimed defective condition of the tire. Accordingly, this exception in the application of SDCL 20-9-9 is not available to Plaintiffs.

A third exception to the application of SDCL 20-9-9 is if the "distributor, wholesaler, dealer, or retail seller is also the manufacturer or assembler of said product or the maker of a component part of the final product." Goodyear Dunlop is not the manufacturer or assembler nor the maker of a component part of the tire unless it "becomes" the manufacturer by virtue of the apparent manufacturer doctrine. To make a distributor, wholesaler, dealer, or retail seller into a manufacturer of the product for purposes of strict liability by application of the apparent manufacturer doctrine is directly contrary to the intent of SDCL 20-9-9. Accordingly, under the facts of this case, Count II, strict liability of manufacturer, will not be presented to the jury and Count II is dismissed.

North Dakota also has statutes which more leniently treat the middleman in products liability cases. The North Dakota statutes, unlike SDCL 20-9-9, are not limited to strict liability product liability cases but instead are broader in scope and apply to any product liability claim that meets the broader definitions within the North Dakota statutes. *See Bornsen v. Pragotrade, LLC*, 804 N.W.2d 55 (N.D. 2011) (holding North Dakota does not recognize apparent manufacturer doctrine given the North Dakota Product Liability Act and its statutory history). There is no informative legislative

6

history concerning SDCL 20-9-9. *See generally, Spurlin, The Basics of Legislative History in South Dakota*, 56 S.D. L.REV. 114 (2011).

It is important to note that when the First Restatement was published, setting forth the apparent manufacturer doctrine, the doctrine of strict liability had not yet been adopted by most state courts, and non-manufacturer sellers of defective products were held to a lesser duty than manufacturers of those products. *See Stein v. Pfizer Inc.*, 137 A.3d 279, 286-292 (Md.App. 2016) (discussing history of the apparent manufacturer doctrine). When strict products liability was adopted, imposing liability on all entities in the distribution chain of a defective product, including the seller, "some courts and commentators" believed it was questionable whether the apparent manufacturer doctrine "retained any relevance." *Id.* at 290. The authors of the Third Restatement acknowledge the apparent manufacturer doctrine has limited application in today's products liability landscape:

> [a]fter inclusion of § 402A in the Restatement, Second, imposing strict liability on all commercial sellers of defective products for harm caused by product defects, it was questionable whether § 400 remained relevant in the context of products liability. Once § 402A imposed strict liability on all product sellers it made little, if any, difference whether the seller of a defective product was a retailer or a manufacturer.

*Id.* at 292 (quoting *Restatement (Third) of Torts: Products Liability*, § 14, cmt. a (1998)).

Punitive damages are also claimed in this lawsuit. There is a conceptual problem with awarding punitive damages against a non-manufacturing defendant who is deemed an apparent manufacturer. The non-manufacturer has no control over manufacturing the product, so the imposition of punitive damages against a non-manufacturer does not deter the actual manufacturer from producing defective products, and the fairness and utility of punishing a non-manufacturer to the same extent as the manufacturer of the defective product is questionable. On the other hand, punitive damages may be justified if a middleman markets defective products in disregard of known dangers to consumers. But a punitive damage award in that situation would be based on the

middleman's own misconduct and not based on the manufacturer's misconduct. As a result, if punitive damages do go to the jury at the end of the trial, the apparent manufacturer instruction will be altered to provide that the doctrine is not applicable to any consideration of whether or not to award punitive damages as well as what punitive damages, if any, should be awarded.

The Court considered referring the question of the interrelationship of SDCL 20-9-9 and the apparent manufacturer doctrine to the South Dakota Supreme Court as can be done pursuant to SDCL Ch. 15-24A. A similar question was certified by the United States District Court for the District of North Dakota and resulted in the *Bornsen* decision, *supra*. The question was dispositive of the lawsuit that was pending in Federal District Court in North Dakota. As can be seen by the analysis in this opinion, the application of the apparent manufacturer doctrine is still not determinative of all of the present claims. As a result, the answer to the question of whether South Dakota would have a limited apparent manufacturer doctrine which excluded strict liability would be asking for a decision from the South Dakota Supreme Court that would not be determinative of this lawsuit. The issue must be determinative to be certified to the South Dakota Supreme Court. SDCL 15-24A-1.

Defendant Goodyear Tire & Rubber has not been shown to have done or failed to do anything with the tire in question that would subject it to strict liability. As for Goodyear Dunlop, the strict liability claim will not be presented to the jury because there is no evidence to present a jury question on any of the exceptions to SDCL 20-9-9 as explained above.

The third cause of action is for negligence. The last sentence in SDCL 20-9-9 provides: "Nothing in this section shall be construed to limit any other cause of action from being brought against any seller of a product." Goodyear Dunlop held the tire out as its "Dunlop" tire and sold the tire as such. Normally the same model tire would have been produced at a New York state plant of Goodyear Dunlop. In anticipation of a production disruption in New York, Goodyear Dunlop secured this and other tires from the manufacturer, Goodyear Dunlop France that had similar but not identical production methods. Goodyear Dunlop not only held the tire in question out as its own tire

8

and sold it as its own, but also sought "to limit its liability for defects in the product." *Micjan v. Wal-Mart Stores, Inc.*, 2016 WL 4141085 (W.D. Pa. 2016). Accordingly, the negligence claim will be presented to the jury as to Goodyear Dunlop.

The record shows that Goodyear Tire & Rubber ultimately owns 75% of Goodyear Dunlop France. Goodyear Tire & Rubber could ultimately exercise control by virtue of its majority ownership through the other wholly owned corporations, but there is no showing that the subsidiary is a dummy or a sham corporation or undercapitalized. No basis for piercing the corporate veil has been shown. *Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1222 (10th Cir. 1997). As a result Goodyear Tire & Rubber is not estopped from denying that it was the manufacturer as there has been no showing warranting the piercing of the corporate veil. There may have been reliance upon a name in purchasing the "Dunlop"tire, but Dunlop is a name that was associated with the other Defendant, Goodyear Dunlop. The negligence claim against Goodyear Tire & Rubber will be dismissed as Goodyear Tire & Rubber did not import, distribute, sell or represent the tire as its own product. Accordingly, the negligence claim against Goodyear Tire & Rubber must be dismissed.

The fourth claimed cause of action is the strict liability claim for failure to warn. There is no failure to warn expert testimony. In this case expert testimony on failure to warn is necessary as explained in the following negligent failure to warn discussion. The fourth cause of action is dismissed against Goodyear Dunlop and Goodyear Tire & Rubber.

The fifth claimed cause of action is for negligent failure to warn. None of the expert witnesses are qualified to nor claim to give adequacy of warning opinions. In most instances, including this case, under applicable South Dakota law, expert opinion is required for negligent failure to warn and strict liability failure to warn cases. *Donat v. Trek Bicycle*, 2016 WL 297436 (D.S.D. 2016). In cases where there is no warning of danger at all, or the warning is patently inadequate, expert testimony on failure to warn might not be necessary. That is not the case here as

there are warnings in this case that are not clearly or patently inadequate. There is some question as to what exactly the warnings were, although the substance of each claimed version is do not pull a trailer behind your motorcycle and pay attention to tire condition and inflation with the rear tire fully inflated to 40 p.s.i. if heavily loaded and the maximum load is indicated on the sidewall of the tire. There would have to be testimony from a qualified expert explaining how each of the warnings or inadequate warnings included with the tire was the legal cause of the death and injuries. *Burley v. Kytec Innovative Sports Equipment*, 737 N.W. 2d 397, 411 (S.D. 2007). There is no evidence to support the claim that there was a negligent failure to warn and that such failure to warn caused the crash and the resulting death and injuries. Accordingly, the fifth cause of action as to both Defendants is dismissed.

The sixth and seventh causes of action are breach of implied warranty as to merchantability as to the sixth claimed cause of action and as to breach of implied warranty of fitness as to the seventh cause of action. Goodyear Tire & Rubber is not an importer, distributor or seller of the tire. As a result, counts six and seven as against Goodyear Tire & Rubber are dismissed. Even though Goodyear Dunlop was not the actual manufacturer it was the importer, distributor and wholesale seller of the tire in question, and it need not be the manufacturer to make the implied warranties of fitness and merchantability. There is an attempt in the Motorcycle Tires Limited Warranty to limit personal injury damages and dismissing any negligence claims. Those limitations are prima facie unconscionable SDCL 57A-2-719(3), and the Court under these circumstances finds them to be unconscionable. In addition, the same limited warranty document in whichever version attempts in small print to exclude all implied and express warranties except for limited tire replacement. The attempted exclusions are not conspicuous and they must be conspicuous. SDCL 57A-2-316(2). Those attempted exclusions are therefore unenforceable. Also, the exclusion of any claim for damages arising from the negligence of Dunlop is unconscionable. SDCL 57A-2-302. *See Durham v. Ciba-Geigy Corp.*, 315 N.W.2d 696 (S.D. 1982) (disclaimer and exculpatory clause on farm crop pesticide held unconscionable). Accordingly, the claims against Goodyear Dunlop for breach of implied warranty of merchantability and breach of implied warranty as to fitness will proceed to trial.

The eighth claimed cause of action is that of Judith McAllister-Lewis for her loss of consortium. Under South Dakota law as to damages, "loss of consortium pertains to the time between the accident and death, and no such time existed in this case." as apparently is true in the present case. *Zoss v. Dakota Truck Underwriters*, 590 N.W.2d 911, 913 (S.D. 1999). The Court went on to state:

> This Court has long recognized that "there is no right ... to a loss of consortium action, derivative or independent, for the wrongful death of one's spouse." *Selchert v. Lien*, 371 N.W.2d 791 (794 (S.D. 1985); see also *Hoekstra v. Helgeland*, 78 S.D. 82, 111, 98 N.W.2d 669, 684 (1959) (stating that the wrongful death statute is an exclusive remedy). However, in a wrongful death action "the jury may give such damages as they may think proportionate to the pecuniary injury resulting from such death to the persons respectively for whose benefit such action shall be brought." SDCL 21-5-7. Moreover, this Court has consistently held that

> pecuniary injury encompasses more than strictly economic losses in that it includes "the loss of decedent's companionship and society as expressed by, but not limited to, the words 'advice,' 'assistance,' and 'protection," but without consideration for the grief and mental anguish suffered by the beneficiaries because of the wrongful death."

Plaintiffs have now made a pre-trial showing that there is sufficient evidence to present the loss of consortium damage claim to the jury. This is a damage claim and not a separate cause of action under South Dakota law. Accordingly,

IT IS ORDERED:

1. That Plaintiffs' First Cause of Action, Strict Products Liability - Design Defect, is dismissed as to both Defendants.

2. That Plaintiffs' Second Cause of Action, Strict Products Liability - Manufacturing Defect, is dismissed both as to The Goodyear Tire & Rubber Company and Goodyear Dunlop Tires North America, Ltd.

3. That Plaintiffs' Third Cause of Action, Negligence, is dismissed as to The Goodyear Tire & Rubber Company and that claim will proceed to trial against Goodyear Dunlop Tires North America, Ltd.

-11

4.  That Plaintiffs' Fourth Cause of Action, Failure to Warn - Strict Liability, is dismissed as to both Defendants.

5.  That Plaintiffs' Fifth Cause of Action, Negligent Failure to Warn, is dismissed as to both Defendants.

6.  That Plaintiffs' Sixth Cause of Action, Breach of Implied Warranty of Merchantability, is dismissed as to Defendant The Goodyear Tire & Rubber Company and that claim will proceed to trial against Goodyear Dunlop Tires North America, Ltd.

7.  That Plaintiffs' Seventh Cause of Action, Breach of Implied Warranty of Fitness, is dismissed as to Defendant The Goodyear Tire & Rubber Company and that claim will proceed to trial against Goodyear Dunlop Tires North America, Ltd.

8.  That the individual claim of Judith McAllister-Lewis, the Eighth claim, Loss of Consortium, will proceed to trial not as a separate cause of action but as a part of the damages claimed against only Goodyear Dunlop Tires North America, Ltd.

9.  That Defendant The Goodyear Tire & Rubber Company's Motion for Summary Judgment, Doc. 80, is granted.

10. That Defendant Goodyear Dunlop Tires North America, Ltd., a/k/a Sumitomo Rubber USA, LLC's, Motion for Summary Judgment, Doc. 83, is granted in part and denied in part.

Dated this 27 day of July, 2017.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: _____
         Deputy